## SPROLES et al. v. ROSEN et ux.

### No. 10920.

Court of Civil Appeals of Texas. Dallas.

Feb. 6, 1932.

Rehearing Denied March 5, 1932.

Frank Rawlings, of Fort Worth, and Burgess, Burgess, Chrestman & Brundidge and L. E. Elliott, all of Dallas, for appellants.

Turner, Rodgers & Winn, of Dallas, for appellees.

JONES, C. J.

In a suit in a district court of Dallas county, appellees, Frank M. Rosen and wife, Mrs. Frank M. Rosen, recovered judgment against appellants, Ed Sproles and T. H. Botsford, in the sum of $2,934.40, with interest at the rate of 6 per cent. per annum from date of judgment. The term "appellee" will refer to Mrs. Rosen, and appellants will be referred to by their individual names. An appeal has been duly prosecuted to this court and the necessary facts are as follows:

During the time under inquiry, Ed Sproles owned and operated the Sproles Motor Freight Line, and Botsford was employed as an operator of the freight trucks. Sproles resided in Tarrant county, Botsford in Dallas county, and appellees in El Paso county.

In March, 1929, appellee was visiting her sister, Mrs. George Schepps, in the city of Fort Worth, and on the afternoon of March 14, 1929, Mr. and Mrs. George Schepps, with appellee as their guest, visited the family of Julius Schepps in the city of Dallas, a brother of George Schepps. On the evening of said March 14th, Botsford, working under a duty of his employment, undertook to operate one of Sproles' loaded trucks from Dallas to Fort Worth, and at a place on the

highway, a short distance east of the town of Grand Prairie, was compelled to park the truck because of leakage of air from one of its tires. The truck was parked on the right, or north, side of the highway, but remained on the pavement. The truck could not be immediately fixed and Botsford was compelled to wait until help could come from Fort Worth. During the time the truck was parked, neither head nor tail lights were showing.

About 10:30 o'clock p. m. the same day, the Schepps, with appellee as their guest, started from Dallas on their return trip to Fort Worth, with George Schepps operating the Buick coupé owned by him. Schepps was on the left side of the automobile, Mrs. Schepps seated next to him, and appellee on the outer side of the one seat with which the coupé was equipped. Before reaching the point where the truck was parked, the highway passes under an overhead crossing of the Texas & Pacific Railroad. Prior to reaching this crossing, the highway extends west on the south side of the railroad, and, as it nears the crossing, it turns north at almost right angles, passes in a northerly direction under the railroad, and so continues for some two or three hundred feet, when it again makes a·sharp turn to the west. Not far beyond this turn in the highway, the truck was parked. The night was very dark, and neither Schepps nor appellee saw the parked truck until just before the collision. As a result of the collision, appellee received serious injuries, and soon thereafter was carried to the town of Grand Prairie for first aid treatment, and then carried to Baylor Hospital in the city of Dallas, where she remained under the care of physicians and nurses for about eleven days, when she was moved from the hospital in an ambulance to the Union Terminal Station in Dallas, placed on a train and carried to her home in El Paso, where she was confined to her bed for a period of four months under the care of a physician and a special nurse. The Buick automobile was demolished and the rear of the truck damaged by the collision. At the time of the collision, as found by the jury on disputed evidence, the automobile was being operated at a rate of speed in excess of thirty-five miles per hour.

The petition filed in the suit, instituted against Sproles and Botsford as being jointly liable for the injuries, alleged various grounds of negligence as a basis for recovery, and those grounds, supported by evidence, were submitted to the jury in the form of special issues. All of the grounds of negligence alleged and submitted were on conflicting evidence, the evidence of appellees tending to support each specific allegation of negligence, and the evidence of appellants tending to disprove each of such allegations. All of the special issues submitting these specific allegations of negligence were found in favor of appellants, except one, which forms the basis for this judgment. On this issue the jury found that there was no tail-light showing on the truck at the time of the collision, and that the failure to show such a light was a proximate cause of appellee's injuries. These findings of the jury are adopted as the findings of this court.

Appellants alleged that each of various acts of George Schepps, while operating the car, was negligence and the sole proximate cause of the injury. The jury found the existence of some of these specific acts of negligence alleged by appellants, but in each instance found that such act was not the sole proximate cause of the injuries. These findings are adopted as the findings of this court on these issues. Special acts of contributory negligence on the part of appellee were pleaded by appellants, and, for a better understanding of the main issue of this appeal, that portion of appellants' pleadings will be quoted in full as follows: "That the plaintiff, Mrs. Frank M. Rosen, knew or should have known that the driver of said car, George Schepps, was a very reckless driver and that it was dangerous to ride with the said George Schepps without keeping a lookout and exercising ordinary care for her own safety to discover objects in the highway; that notwithstanding said knowledge, the plaintiff wholly failed to use ordinary care for her own safety and was negligent in failing to keep a lookout in the course in which said automobile was traveling, and in failing to warn said George Schepps of the rate of speed at which he was driving said car, and in failing to warn the said George Schepps of the presence of said truck on the highway at a time when she knew, or ought to have known, that the said George Schepps was not keeping a lookout nor observing the highway in the direction in which he was going; in riding in said car knowing that the lights were insufficient to illuminate the highway for a sufficient distance ahead of said car to permit the same to be stopped upon discovery of any obstacle in the highway; and riding in said car knowing or chargeable with said notice that the brakes of said car were insufficient to stop the same within space illuminated by the lights on said car, and in wholly failing to use any care whatsoever for her own safety under .the circumstances alleged by her in her petition. * * *"

It thus appears that, by specific allegations, appellants plead failure of appellee to exercise ordinary care for her own safety, in several enumerated particulars, viz.: (1) In failing to keep a lookout in the course in which said automobile was traveling; (2) in failing to warn George Schepps as to the speed he was traveling and as to the presence of the truck on the highway; (3) in riding in the automobile knowing that the lights were

insufficient properly to illuminate the highway; and (4) in riding in said car knowing that the brakes were insufficient to stop the same within the space illuminated by its lights.

The evidence did not raise the issue as to the insufficiency of either the lights or the brakes on the Schepps automobile, and hence these two specific acts of appellee's alleged negligence were not submitted. The trial court submitted the issue of appellee's negligence in failing to keep a lookout, the issue of appellee's negligence in failing to warn Schepps as to the rate of speed at which he was traveling, and the issue of appellee's negligence in failing to warn Schepps of the presence of the truck on the highway. All of these defensive issues were found in favor of appellee on sufficient evidence to sustain the findings and are adopted as the findings of this court. It therefore appears that every specific act of negligence alleged to have been committed by appellee, which found support in evidence, was submitted to the jury, and on each of such issues the finding was in favor of appellee.

■ The allegation that "plaintiff wholly failed to use ordinary care for her own safety," preceding the specific allegations of her negligence, must be considered merely as a general allegation introductory to, and as a basis for, the succeeding specific allegations, pointing out wherein, and showing in what manner, she failed to use ordinary care for her own safety. These specific allegations of negligence have the legal effect of limiting and restricting the preceding general allegation to the specific acts alleged. Gulf, C. & S. F. Ry. Co. v. Scott (Tex. Civ. App.) 27 S. W. 827; Wallace v. Railway Co. (Tex. Civ. App.) 42 S. W. 865; San Antonio Gas & Elec. Co. v. Speegle (Tex. Civ. App.) 60 S. W. 884; Missouri Valley Bridge Co. v. Ballard, 53 Tex. Civ. App. 110, 116 S. W. 93; Lantry-Sharpe Contracting Co. v. McCracken, 53 Tex. Civ. App. 627, 117 S. W. 453; Kansas City Ry. Co. v. James (Tex. Civ. App.) 190 S. W. 1136; Missouri, K. & T. Ry. Co. v. Chittim (Tex. Civ. App.) 40 S. W. 23; Debes v. Greenstone (Tex. Civ. App.) 247 S. W. 289; Rosenthal Dry Goods Co. v. Hillebrandt (Tex. Civ. App.) 280 S. W. 882. Likewise, the general allegation reading, "in wholly failing to use any care whatsoever for her own safety under the circumstances alleged by her in her petition," immediately following allegations of the specific acts of negligence, must be construed as a mere statement that the effect of the failure of appellee to do the specific acts alleged to have been negligence amounted to a failure to use any care whatever for her own safety; otherwise, both of said general allegations would have been subject to the special exceptions leveled by appellee against them and overruled by the court. In other words, appellants' defensive

pleading on the question of appellee's negligence consists solely of the allegations setting out specifically the conduct of appellee, alleged to have been negligence on her part.

■ Evidently in response to the general allegation above quoted, and over proper and timely objection by appellee, the court submitted, and the jury rendered verdict upon, the following special issues:

"No. 50. Do you find from a preponderance of the evidence that the plaintiff, Mrs. Frank M. Rosen, failed to use reasonable care for her own safety on the occasion in question? Answer: 'Yes.'

"No. 51. Do you find from a preponderance of the evidence that such failure, if any, was negligence? Answer: 'Yes.'

"No. 52. Do you find from a preponderance of the evidence that such negligence, if any, proximately contributed to and caused plaintiff's damages, if any? Answer: 'Yes.' "

The submission of these issues immediately followed the submission of the issues responsive to appellants' pleadings and the evidence in respect to the several specific acts of negligence of which appellee was alleged to be guilty. Under the record in this case, the legal effect of this submission was to call upon the jury to express an opinion as to whether appellee exercised reasonable care for her own safety, independent of the issues submitting the specific acts of negligence alleged to have been committed by her, and independent of the evidence supporting these specific acts of negligence. Appellants' defensive pleading gives no warrant for this submission, and the findings thereon can form no basis for a judgment.

■ What has heretofore been said on this issue has referred to the failure of the pleadings to include the issues in question, but the same rule applies to an issue submitted that is not supported by evidence. An issue properly pleaded, but without any evidence to support such pleading, cannot form any basis for a judgment, though erroneously submitted to a jury by the court and a verdict rendered thereon. As we construe the evidence in this case, it raises no issues of any act of negligence committed by appellee, other than as to those issues specifically pleaded by appellants, submitted by the court and found by the jury against appellants' contentions. As the jury made these findings adverse to appellants, on the specific allegations of negligence, it must be concluded that, in basing their findings on special issues Nos. 50, 51, and 52, favorable to appellants, they did so on some consideration other than the evidence on the issues supporting their preceding findings. The evidence, however, raises no issuable fact of negligence other than those found favorable to appellee; therefore the conclusion is inescapable that the findings favorable to appellants on the issues

**334**

in question are not supported by any substantial evidence, and hence can form no basis for a judgment in favor of appellants. The court therefore did not err in ignoring the findings on special issues Nos. 50, 51, and 52 and in entering a judgment without regard to such findings. This the court is now authorized to do, there being no supporting evidence for the finding of the jury on the issues in question, under the terms of a procedural statute enacted by the Forty-Second Legislature. See chapter 77, p. 119 of the General Laws of the Regular Session of the Forty-Second Legislature (Vernon's Ann. Civ. St. art. 2211). Though this statute was enacted after the judgment entered in this case, it being on a mere matter of procedure, it is applicable on the appeal in this case. Pierce Co. v. Watkins, 114 Tex. 153, 263 S. W. 905. The court was also authorized to ignore this finding, independent of such enactment, because, as we have seen, it has no support in pleading. Hussmann v. Leavell & Sherman (Tex. Com. App.) 32 S.W.(2d) 643; Johnson v. Breckenridge-Stephens (Tex. Com. App.) 257 S. W. 223.

The contention made by appellants, in respect to the submission of the issue of unavoidable accident, is not well taken. The issue was properly submitted, both as to its form and as to the placing of the burden of proof, and the answer of the jury clearly makes the finding that the collision, resulting in the injuries to appellee, was not the result of an unavoidable accident.

■■ Appellants contend that error was committed in the admission of certain evidence over their proper and timely objection. Botsford testified that a tail-light was showing on the truck at the time of the collision, and in response to specific questions by appellees on cross-examination denied that he had stated to one George C. McElhearn, at the place of, and a few minutes after, the collision, that the truck had no tail-light showing. In rebuttal of this testimony and over the timely and proper objection of appellants, appellees were permitted to prove by McElhearn that he had just passed the truck and the car in which appellee was riding, when he heard the crash caused by the collision; that he at once turned around, went back to the car, and saw Botsford, whom he did not know, but who admitted he was the driver of the truck, and that Botsford told him, in response to his questions, that he had no tail-light showing; that this was about five minutes after the collision. There was no requested instruction to limit this evidence to impeaching testimony, and, regardless of whether it was admissible as res gestæ, it was admissible as original testimony against Botsford, and admissible as impeaching testimony against Sproles. There was

no error in admitting the testimony. We think Botsford was sufficiently identified as the person with whom the witness talked.

We think the amounts found by the jury as hospital, nurse, medical, and physician's charges are sustained by proper proof. We are also of the opinion that the amount found by the jury for the personal wearing apparel, spectacles, and other personal property of appellee, lost or destroyed because of the collision, is sustained by proper evidence. All assignments of error in reference to these matters are overruled.

All other assignments of error, not specifically mentioned, have been examined, with the result that we find they present no reversible error. It therefore follows that, in our opinion, the judgment of the court below should be affirmed, and it is so ordered.

Affirmed.