## ROGERS v. COOK.

### No. 1778.

Court of Civil Appeals of Texas. Eastland.

April 8, 1938.

Rehearing Denied May 6, 1938.

GRISSOM, Justice.

Plaintiff, C. R. Rogers, sued the defendant, O. F. Cook, seeking damages and an injunction requiring defendant "to repair and replace the *natural ridge and levy* of land along the south line of defendant's land to the ends that the overflow and flood waters will not run upon and be diverted to plaintiff's land" and to enjoin defendant from attempting to ditch or drain the overflow waters from his land onto the plaintiff's land, etc.

Plaintiff alleged that he and defendant owned and lived on their respective farms adjoining the Hodges-Merkel public road, plaintiff living on the south and defendant on the north side of said road. Plaintiff alleged the topography of said farms; that the road between plaintiff's and defendant's farms was well graded, with "sufficient bar

pits on each side to take care of the drainage of said road"; that near the farms Jones county had built a bridge with "a drainage capacity of about five foot deep, which furnishes an outlet under said road sufficient to take care of the natural flow of the surplus water that will under ordinary circumstances and conditions accumulate in said bar pits and which drainage runs south from said bridge across a slight depression or natural flow over plaintiff's land.

"North of said bridge over in the edge of defendant's land is a *natural upheaval and ridge of land* running east and west from the Anson road west a distance of slightly more than one-half of the length of defendant's land, *which is a natural ridge of land which furnished a protection from overflow waters accumulating on defendant's land from flowing down and under said bridge and into plaintiff's land.*"

In the third paragraph of plaintiff's petition it was alleged that three or four years before the filing of the petition defendant "begun at a point directly north of said bridge a sytsem of plowing, scraping and digging down said *natural ridge of land* running practically parallel with the south line of defendant's land to the ends that he might change the natural flow and across and run the same through a ditch or channel in *said ridge of land* down through and under the bridge in the Hodges road and upon the plaintiff's land and that the defendant did, and has, cut through said natural ridge of land to such an extent that he has changed and diverted the natural flow of the flood waters down said course and onto the plaintiff's land," causing the washing of ditches on plaintiff's land and overflowing the crops and land of plaintiff.

In the fourth paragraph it was alleged that defendant was "again threatening and attempting to completely plow, scrape and dig down the remainder of said *natural ridge*" so that he "would completely change the natural flow of the flood waters from his land * * * causing the same to run down under said bridge and onto the plaintiff's land," and if not enjoined "from further attempting to cut said ditch and drainage and cut down said *natural ridge of land* and change the natural flow of said water that defendant will turn all of said flood waters in and upon plaintiff's land, * * *" which, it was alleged, would "produce an irreparable injury, damage and harm to the plaintiff."

In the fifth paragraph it was alleged that defendant had already diverted the natural flow of the water under said bridge, causing washing and damage to plaintiff's land in the sum of $500, and, unless enjoined, the damage would continue and increase "and if permitted to completely tear down said *natural ridge of land* and completely change the natural flow of said water out of its natural course and onto the plaintiff's land that further irreparable injury will result to plaintiff."

Plaintiff prayed for judgment for damages and for an injunction "directing the defendant to repair and replace the *natural ridge and levy of land* along the south line of defendant's land to the ends that the overflow and flood waters will not run upon and be diverted to plaintiff's land, as herein set out, and that the defendant be enjoined and restrained from further attempting to ditch or drain the overflow waters from his land on the plaintiff's land," etc.

A temporary injunction was granted.

Upon a trial of the cause the issues submitted to and answered by the jury were as follows:

"1. From a preponderance of the evidence in this case do you find that there was originally a natural ridge of land running east and west on the south side of the east portion of the O. F. Cook land between the Hodges and Stith public road and the east lake on the Cook land? Answer: No.

"2. Do you find from a preponderance of the evidence that the defendant O. F. Cook has opened up a drainway through said ridge of land at a point between his east lake south to the culvert in the Hodges and Stith road? Answer: No.

"3. From a preponderance of the evidence do you find that the defendant O. F. Cook did by opening a drainway in said ridge, as above inquired about, change the natural flow of any portion of the flood waters from the east side of his farm? Answer: No.

"4. Do you find from a preponderance of the evidence that the change of said flood waters, as inquired about in special issue No. 3, if any was changed, flowed down upon the plaintiff C. R. Rogers farm? Answer: No.

"5. Do you find from a preponderance of the evidence that the defendant O. F. Cook did, at any time during the year 1936 and before the filing of this suit, make any attempt to change the course of any portion

of the flood waters from his farm to the farm of the plaintiff? Answer: Yes."

Also, the following issues were submitted at defendant's request and answered as hereinafter shown:

"1. Do you find from a preponderance of the evidence in this case that the defendant herein has diverted the natural flow of the surface water on his land so as to throw it on plaintiff's land? Answer: No."

"5. Do you find from a preponderance of the evidence in this case that some three or four years prior to the filing of this suit, suit being filed herein November 18, 1936, that north of the culvert on the Merkel and Hodges road and on the south line of defendant's land, as described by plaintiff in his pleading, that there was a natural upheaval and ridge of land running east and west from the Anson Road west a distance of slightly more than 1/2 of the length of defendant's land? Answer: No.

"6. Do you find from a preponderance of the evidence that defendant cut or plowed down said ridge for the purpose of diverting the natural flow of the surface water on his land? Answer: No."

"9. Do you find from a preponderance of the evidence in this case that defendant at and prior to the date of the filing of plaintiff's petition herein was threatening or attempting to divert the natural flow of the water at a point different from where it was accustomed to flow? Answer: Yes."

It will be observed that no issue as to damages was submitted to the jury. After the return of the verdict plaintiff and defendant presented their respective motions for judgment. Defendant's motion for judgment was based, first, upon the verdict; second, and in the alternative, for a judgment notwithstanding the answers of the jury to issue No. 5 (of the court's issues) and issue No. 9 (requested by defendant).

The court granted defendant's motion for judgment and rendered judgment denying plaintiff all relief prayed for and plaintiff has appealed.

Plaintiff presents but one assignment of error and one proposition thereunder. The assignment of error is to the effect that the court erred in rendering judgment for the defendant. The reason is stated in connection with the assignment, in substance, that the answers to issue No. 5 (of the court's main charge) and issue No. 9 required a judgment for plaintiff enjoining defendant as prayed for.

■ Plaintiff's proposition is to the effect that defendant having requested the submission of an issue to the jury (issue No. 9) cannot now say that such issue is without support in either the pleadings or evidence. Article 2190, as amended Acts 1931, 42d Leg., p. 120, c. 78, § 1, Vernon's Ann.Civ.St. art. 2190, provides, in part: "A claim that the evidence was insufficient to warrant the submission of any issue may be complained of for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party." Also see R. B. George Machinery Co. v. Stark, 123 Tex. 529, 531, 73 S.W.2d 519.

■ If the judgment should be construed as a judgment non obstante veredicto it must be affirmed in the absence of a statement of facts disclosing that said issues Nos. 5 and 9, depended upon by the plaintiff as requiring a judgment for him, were supported by evidence, contrary to defendant's allegations in the alternative plea of his motion for judgment. No statement of facts has been filed in this court. Article 2211, as amended by Acts 1931, 42d Leg., p. 119, c. 77, § 1, Vernon's Ann.Civ.St. art. 2211; Hines et al. v. Parks et al., 128 Tex. 289, 296, 96 S.W.2d 970; Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 27, 91 S.W.2d 332.

■ By its answer to special issue No. 5, the jury found that in 1936 defendant made an attempt to change the course of a portion of the flood waters from his farm to plaintiff's farm. Such attempt was found by the jury to have been unsuccessful. (See answer to issue No. 1, requested by defendant.) There is no finding to the effect that unless restrained defendant would act in such manner as to injure plaintiff's land. (Had the defendant in his testimony declared that he would not thereafter do any of the acts he was charged with having prior thereto threatened or attempted, the court would have been justified in refusing to enjoin him from doing such things.) In answer to issue No. 9 the jury found "at and prior to the date of filing plaintiff's petition" defendant "was threatening or attempting to divert the natural flow of the water at a point different from where it was accustomed to flow." Standing alone, such finding does not show an impending danger to plaintiff's land. Defendant could "divert the natural flow of the water at a point different from where it was accustomed to flow" and keep it on his own land without

injury to plaintiff. The act found to be threatened or attempted is now occurring on most farms in accord with modern farm practices in soil conservation. The jury found that the diversion of the flood waters by defendant did not have the effect of throwing the water on plaintiff's land. Plaintiff's contention is that the answers to said two issues require a judgment for plaintiff. There is no contention made that they are in conflict with other answers of the jury; the court is required to harmonize the answers if it can reasonably be done.

After a careful consideration of plaintiff's petition, we have concluded that the necessary construction thereof is to the effect that it was alleged that "north of the bridge" situated within about 300 yards of the crossing of the Hodges-Merkel road and the Anson road, "over on the edge of defendant's land is a *natural upheaval* and ridge of land running east and west from the Anson road west a distance of slightly more than one half of the length of defendant's land, which is a *natural ridge of land* which furnished a protection from overflow of flood waters accumulating on defendant's land from flowing down and under said bridge and into plaintiff's land," and that all the allegations as to acts threatened, attempted or done by defendant, and which plaintiff desires that defendant be enjoined from doing, are in connection with some act so threatened, attempted or perpetrated in connection with the alleged "natural upheaval," or "natural ridge" or "levy" of land alleged to furnish a natural protection of plaintiff's land from flood waters coming from defendant's land. The jury most definitely found that such alleged natural protecting ridge never in fact existed. See the answers to special issue No. 1 and special issue No. 5 (requested by defendant), supra. The jury not only found that such ridge did not exist, but it further found (1) that defendant had not opened a drainway "through said ridge" at a point alleged; (2) that defendant did not "cut or plow down said ridge for the purpose of diverting the natural flow of the surface water on his land." There were certainly no specific allegations that defendant was attempting to divert the water other than in connection with cutting, etc., of the alleged natural ridge, or at any other place, that would have supported an issue as to a diversion or injury attempted, threatened, or done independently of the alleged natural ridge. All plaintiff's allegations were tied to the alleged "natural ridge" found by the jury to be non existent. The effect of such finding was to destroy plaintiff's case.

We therefore, conclude that said issues Nos. 5 and 9 find no support in the pleadings. They were therefore immaterial. Being immaterial they were properly disregarded by the court in rendering judgment. Miller v. Lemm, Tex.Com.App., 276 S.W. 211, 216; Nu-Enamel Paint Co. v. Culmore, Tex.Civ.App., 72 S.W.2d 390; Dendy v. Cockerham, Tex.Civ.App., 82 S.W.2d 756, 758; Jackson v. Cloer, Tex.Civ.App., 98 S.W.2d 358; City of Ft. Worth v. Gause, Tex.Com.App., 101 S.W.2d 221, 223; Sproles v. Rosen, Tex.Civ.App., 47 S.W.2d 331, affirmed 126 Tex. 51, 84 S.W.2d 1001.

(Italics are the courts.)

The judgment is affirmed.